Judge Mills
delivered the opinion.
The appe lant filed his bill in the court below, alleging that Edmund Logwood was the patentee of a tract of land, to the one half of which Robert Johnston was entitled as locator, and that Johnston executed to him an instrument • of writing in the following words:
‘I am willing to let John W. Howe have four hundred acres of land in Logwood’s 10,QUO acre entry, near Ohio aim Little Sandy, where he has settled on the tra$t from Major Hood’s to the salt work’s, at its value, if we cannot agree, when il is laid off as woodland, provided Logwood, mv patentee, will agree to it; but if good salt water should be found'on it, then vve art to par tor his improvements and give him oilier land at its.value, and keep the land, Given under our hands and seals this 2d day of September, 1802. Signed, ROBERT JOHNSON, (seal.)
JOHN w. HOWE, (SEAL.)”
He then proceeds to allege, that in the month of November, 1811, Thomas Logwood, a son of the patentee, and claiming as his heir after his decease, came to this state, and by commissioners procured a division of the land between himself and Johnson, in which division the appellant’s settlement fell into (be share assigned to Logwood;— and that after an unsuccessful negotiation about the purchase of the land from Thomas Logwood, he, Logwood, insisted that Howe should surrender the possession: ’«'hat he, the appellant, was unwilling to do it, unless Logwood would pay for the improvements: That Logwood professed a willingness to pay for the improvements, and promised to do so, if be, Howe, would take a lease for the premises for one year, and execute his note for the rent, which lie did do, being perplexed with his situation and so confused that he hardly knew what he did: That he had made large, lasting and valuable improvements on the land, of great value, relying on the faith or the contract with Johnson — -and that at the end of the year Logwood had sued for the rent, aDd prosecuted a warrant of forcible detainer to judgment. He then makes Thomas Logwood and Johnson’s heirs defendants, and prays compensation for his improvements.
Logwood answers, admitting he found the appellant on the laud — that he bad offered to let the appellant have it, *389 ■but the terms did not suit him proposed by the appellant, and that lie threatened suit for the possession, till the appel Jant took tbé leas*'; and he utterly desks that he ever professed any willingness to pay for the improvements, or promised to do so.
⅛ imner-fact contract h>r lands, deft" comoie^ (⅛ <>»'contingencies 'v!l cl> n^'er not entitle the occupant proyemeiusi" ¡ e mus. be considered as ⅛, prevements "*«le for bis „T"tion Clind must súrreiS her on ;he
Johnson’s heirs admit the writing of their ancestor, but contest their liability for improvements. The circuit court dismissed the bill; from which decree Howe has appealed to this court
There is but one witness, who proves any promise or nssurance on the part of Logwood to pay for the improve-meats; and no corroborating circumstance aids this proof. recording to a well settled rule, the positive denial of the answer most prevail over this evidence. It is not pretended that Edmund Logwood, the patentee, ever agreed to the sale or contract, if so it may be called, between Johnson and Howe. As the improvements are assigned to Log-wood, and are enjoyed by hint, there can be no ground for a decree against Johosori’s heirs, unless the expressions the writing should bind them to pay for the value of the improvements. It is evident, from an inspection of the writing, that the stipulation to pay for improvements could only operate on the contingency of the patentees agreeing to the sale of the land, and that sale being completed — of salt water then being found, on which event it was to revert to the vendors. In other words, jf the contract was ever complete, and, under the faith of it, Howe should make improvements, and salt water should be found, on which event he must give it up, then his improvements must be taken into account on the rescisión of the contract, and their value paid. These contingencies not having happened, the stipulation relative to improvements cannot have any bearing in favor of the appellant against Johnson's heirs.
The question remaining, is, was the appellant such an occupant as was innocently induced to expend his labor in ameliorations, which ought to be compensated by Logwood, to whom they are assigned. We cannot denominate the writing relied upon, a contract for the sale of tit? land. It fixed only tlu-quantity, and not the price of thq land. This rested upon the future and uncertain agreement of the parties; and if they could not agree, the vaitjte, ascertained in some otljer mode, was to be resorted to. The writing was to have no operation without the consent of *390 the patestefe, which the appellant might tbereaftet ohtaftr if he coijld, and which he never attempted to obtain. lit short, the writing was only a declaration of a willingness to make a sale, 0» certain contingencies, which never bap-pened. The appellant might have, for a shoTt period, a reasonable hope that he would be able to obtain a contract,, but tie never could have a reasonable belief, that the land Was his, or suppose it his otvn. tic appears, bytbe writing, tp be settled first upon the land having no claim. Heat-tempted to procure it, but never brought his negociation to a close. If be never bought, he confessedly bad no interest. If, under these, circumstances, he expended his money and labor on improvements, be must be presumed to have done so for iris temporary convenience, and could not expect the permanent enjoy merit. To surrender them tft the right owner, he must stand always ready; anda tenant at will might as reasonably expect a remuneration for iih-prove in cats, which he must surrender at tbe will of his landlord. We conceive, therefore, that the cotttt did right in deciding against bis claim.
Pope for appellees, Bilb for appellant.
Tbe decree must be affirmed with costs.